IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | * |
| TEAONNA HOLLOMAN, on behalf Of herself and all others similarly situated | * |
| *Plaintiff*, | * |
| v. | *      Civil Action No. RDB-23-134 |
| CONSUMER PORTFOLIO SERVICES, INC., *et al.*, | * |
| | * |
| *Defendants*. | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM ORDER</u>

Plaintiff Teaonna Holloman ("Plaintiff" or "Holloman") brings this action against Defendants Consumer Portfolio Services, Inc. ("Consumer Portfolio Services") and Amy K. Kline ("Kline") (collectively, the "Defendants"), alleging violations of the Maryland Consumer Debt Collection Act ("MCDCA"), MD. CODE, COM. LAW § 14-201 *et seq.*, (Count I), and Maryland Consumer Protection Act ("MCPA"), MD. CODE, COM. LAW § 13-301 *et seq.*, (Count II), against Defendants; violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, against Kline (Count III); and seeking declaratory and injunctive relief against Consumer Portfolio Services (Count IV). (Compl., ECF No. 3.) Pending before the Court is Defendants' Motion to Compel Non-Class Arbitration. (ECF No. 13.) Plaintiff has opposed the Motion, (ECF No. 18), and Defendants have replied. (ECF No. 19.) The Court has considered the filings and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, Defendants' Motion to Compel Non-Class Arbitration (ECF No. 13) is GRANTED.

**BACKGROUND**

On July 6, 2017, Plaintiff Teaonna Holloman purchased a used 2011 Lexus IS250 (the "Vehicle") from Exclusive Motor Cars, LLC, a dealer located in Baltimore, Maryland ("Exclusive Motor Cars" or the "Dealer"). (Compl. ¶ 27, ECF No. 3.) In connection with that purchase, Holloman signed a Retail Installment Sale Contract ("RISC") with the Dealer, which specifies that "[f]ederal law and Maryland law apply to this contract" and the contract is "subject to the Credit Grantor Closed End Credit Provisions (Subtitle 10) of Title 12 of the Commercial Law Article of the Maryland Code." (*Id.*) The RISC was assigned to Defendant Consumer Portfolio Services at the same time Holloman signed the contract. (*Id.* at ¶ 30; Defs.' Mot. Compel Arbitration 3, ECF No. 13.)

As part of the RISC, Defendants allege—and Plaintiff disputes—that Holloman also signed the RISC – Arbitration Agreement ("Arbitration Agreement"), attached to Defendants' Motion to Compel Class Non-Class Arbitration as Exhibit B. While it is not mentioned in the RISC, the Arbitration Agreement bears the signatures of both Holloman and a representative of Exclusive Motor Cars and provides that it is "part of any retail installment sale contract . . . you sign." (Ex. B, ECF No. 13-3.) In relevant part, the Arbitration Agreement, which states that it is "governed by the Federal Arbitration Act," allows either party to elect that "[a]ny claim or dispute . . . (including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute), between [Holloman and the Dealer or the Dealer's] employees, agents, successors[,] or assigns . . . be resolved by neutral, binding arbitration and not by a court action." (*Id.*) Additionally, the Arbitration Agreement provided that "[I]F A DISPUTE IS ARBITRATED, [PLAINTIFF WOULD] GIVE UP [HER]

RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS." (*Id.*)  Importantly, the Arbitration Agreement provided that the parties "retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction." (*Id.*)

Holloman asserts that she made payments for several years but stopped doing so at some point, which led to her Vehicle being repossessed on December 2, 2020.  (Compl. ¶ 32, ECF No. 3.)  On December 4, 2020, Defendant Consumer Portfolio Services sent a letter ("Post-Possession Notice") notifying Holloman that it had taken possession of the Vehicle and that it would be sold at a private sale sometime after December 21, 2020 unless she paid the full amount owed.  (*Id.* at ¶ 33.)  The Post-Possession Notice stated that the contract balance was $17,668.52 and "[t]he total amount required to redeem the Vehicle as of the date of the notice [was] $18,492.41." (*Id.*)  According to Plaintiff, Consumer Portfolio Services violated MD. CODE, COM. LAW § 12-1012 by accelerating the entire balance and stating that this amount was required to "redeem" the vehicle.  (*Id.* at ¶ 46.)

On February 4, 2021, Consumer Portfolio Services sent Holloman notice ("Notice of Sale") that the Vehicle would be sold at a private sale.  (*Id.* at ¶ 34.)  On February 22, 2021, Consumer Portfolio Services sent Holloman notice ("Notice of Deficiency"), which stated that the Vehicle had been sold and demanded Plaintiff pay a deficiency in the amount of $15,812.87.  (*Id.* at ¶ 35.)  While the Notice of Deficiency indicated that the amount owed before applying the sales proceeds and the costs of repossessing and selling the Vehicle was

$20,742.87, Plaintiff alleges that it failed to include any information regarding the number of bids sought and received at private sale in violation of MD. CODE, COM. LAW § 12-1021.  (*Id.* at ¶¶ 35–37, 48–49.)  Plaintiff claims that Consumer Portfolio Services applied the proceeds of the sale to an amount in excess of what was owed at the time Holloman's Vehicle was repossessed, also in violation of MD. CODE, COM. LAW § 12-1021.  (*Id.* at ¶ 50.)  Plaintiff further alleges that because the Post-Possession Notice and Notice of Deficiency failed to comply with MD. CODE, COM. LAW § 12-1012, Consumer Portfolio Services was not entitled to "any deficiency judgment," pursuant to MD. CODE, COM. LAW § 12-1021(k).  (*Id.* at ¶ 51.)

On July 18, 2022, Consumer Portfolio Services, through its attorney Defendant Kline, filed suit against Plaintiff in the District Court for Baltimore City, alleging breach of contract (the "Collection Case").  (*Id.* at ¶ 38.)   In its suit, Consumer Portfolio Services sought $12,738.52, plus interest of $1,707.53 and attorneys' fees of $1,910.78.  (*Id.*)   On November 11, 2022, Holloman filed a Notice of Intention to Defend.  (Ex. D, ECF No. 18-4.)

On December 15, 2022, Holloman filed a class action complaint against Defendants Consumer Portfolio Services and Kline in the Circuit Court for Anne Arundel County, alleging violations of the MCDCA, MCPA, and FDCA.  (ECF No. 3.)   The Complaint defines the Class as consisting of:

> All Maryland consumers whose vehicles were repossessed and were sold by [Consumer Portfolio Services] or contractors acting on its behalf on or after four years before the filing of this action pursuant to a credit contract governed by [CLEC] *and as to whom Consumer Portfolio Services sued for a deficiency judgment* and were sent [deficient] post-repossession notices . . . .

(*Id.* at ¶ 42 (emphasis added).)  The Complaint also provides for a Subclass, which consists of "All members of the Class *who were sued by Defendant [Kline], acting as counsel for Defendant Consumer*

*Portfolio Services* . . . and were served with the lawsuit on or after one year before the filing of this action." (*Id.* at ¶ 43 (emphasis added).)

Contemporaneous to filing the class action complaint, Holloman moved the Baltimore City District Court to stay the Collection Case, and that motion was granted on December 28, 2022. (ECF No. 18-4.)  On January 18, 2023, Defendants removed this action to this Court on the basis of federal question jurisdiction. (ECF No. 1.)  On January 19, 2023, Kline filed an Answer. (ECF No. 4.)

On February 1, 2023, Defendants moved to compel non-class arbitration, pursuant to the Arbitration Agreement and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and to stay proceedings pending arbitration. (ECF No. 13.)  In opposition, Plaintiff argues that Defendants have failed to properly authenticate the Arbitration Agreement, that Defendant Kline is not a party to any arbitration agreement and cannot enforce the agreement as to herself and Plaintiff, and that Defendants waived the right to arbitrate by previously initiating the Collection Case against Plaintiff in small claims court. (ECF No. 18.)  Defendants reply that Plaintiff's arguments are without merit. (ECF No. 19.)  This Motion is ripe for review.

## STANDARD OF REVIEW

### I.   Motions to Compel Arbitration.

Although motions to compel arbitration "exist in the netherworld between a motion to dismiss and a motion for summary judgment," the decision to treat a motion to compel as one or the other "turns on whether the court must consider documents outside the pleadings." *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012).  Because the Arbitration Agreement is not integral to the Complaint, and thus the Court must consider the

agreement itself as extrinsic evidence, the Court construes the Defendants' Motion to Compel Non-Class Arbitration as a motion for summary judgment. *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) ("Treating a motion to compel as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute . . . or where documents outside the pleadings must be considered."). Under Federal Rule of Civil Procedure 56(a), "motions to compel arbitration shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Thomas v. Progressive Leasing*, No. RDB-17-1249, 2017 U.S. Dist. LEXIS 176515, at *2 (D. Md. Oct. 25, 2017) (citing FED. R. CIV. P. 56(a); *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251–52 (D. Md. 2011)). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at

249–50.  A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## II.    The Federal Arbitration Act.

"Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir. 1998) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986)).  The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, requires that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at § 2; *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) ("This text reflects the overarching principle that arbitration is a matter of contract." (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010))).  Arbitration agreements "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 364 (2011) (internal citation omitted).  The FAA also requires that a federal court stay any proceedings that present a controversy which the parties have agreed to arbitrate.  9 U.S.C. § 3.  Moreover, the FAA "establishes that, as a

matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Despite this presumption, agreements to arbitrate are fundamentally about private choice. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Federal courts have the authority to compel arbitration, but in making that determination this Court is mindful that its role is limited to determining the "question of arbitrability," or the "gateway dispute about whether the parties are bound by a given arbitration clause." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

The United States Court of Appeals for the Fourth Circuit has held that a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). "Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001). State contract formation law determines the validity of arbitration agreements.

*Concepcion*, 563 U.S. at 338–39; *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005).  In Maryland, "the law of the jurisdiction where the contract was made controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 467 (Md. 1988).  As this case involves the issue of the validity of the Arbitration Agreement and because the contract was entered into by the Plaintiff and the Dealer in Maryland, Maryland law governs.

### III.    Applicable Maryland Law.

Under Maryland law, an agreement to arbitrate disputes is enforceable if it is a valid contract.  *Hill*, 412 F.3d at 543.  To determine the validity of the arbitration agreement, Maryland courts look at the four corners of an arbitration provision.  *Id.*  As with any contract, the arbitration provision must be supported by adequate consideration in order to be valid and enforceable.  *See Cheek v. United Healthcare*, 835 A.2d 656, 661 (Md. 2003).

## ANALYSIS

Defendants move this Court to compel Holloman to arbitrate her claims on a non-class basis pursuant to the terms of the parties' Arbitration Agreement, pursuant to the Arbitration Agreement and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and to stay proceedings pending arbitration.  (ECF No. 13-1).  Defendants assert that this matter is straightforward: if this Court finds that the Arbitration Agreement is a valid agreement, then Plaintiff must arbitrate her claims, including any dispute over the arbitrability of her claims. (*Id.* at 8–12.)  Defendants further aver that even if this Court had jurisdiction to determine the arbitrability of this dispute, this Court should compel arbitration.  (*Id.* at 12–21.)  Lastly, Defendants argue that the Arbitration Agreement prohibits Holloman from pursuing class-wide arbitration.  (*Id.* at 21–23.)  In opposition, Plaintiff argues that Defendants have

failed to properly authenticate an arbitration agreement, (ECF No. 18 at 3–5); Kline is not a party to, nor is she contemplated by the Arbitration Agreement, (*id.* at 11–12); and Defendants have waived their right to arbitrate this matter by initiating the Collection Case against Holloman and removing this action to this Court. (*Id.* at 5–11.)

This Court finds that Holloman and the Dealer initially entered into a valid arbitration agreement; that Defendants sufficiently authenticated the Arbitration Agreement, which is not hearsay; that Defendant Kline is contemplated by the Arbitration Agreement as an agent of Consumer Portfolio Services; and that Holloman has not shown that the Defendants waived the right to arbitrate by prior litigation conduct. Accordingly, the Court GRANTS Defendants' Motion to Compel Non-Class Arbitration.

## I.      The Parties Entered into a Valid Arbitration Agreement.

As an initial matter, the parties agree that Holloman entered into a RISC with the Dealer on July 6, 2017. (ECF Nos. 13, 18, 19.) However, the parties disagree—or appear to disagree—as to whether the RISC involved a valid and enforceable arbitration agreement. For the reasons set forth below, this Court holds that the parties entered into a valid arbitration agreement.

The FAA "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citing 9 U.S.C § 2). Under Section 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'"

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Here, Defendants allege—and Plaintiff disputes—that the parties agreed to arbitrate disputes arising out of or relating to the RISC pursuant to the Arbitration Agreement, which was submitted as Exhibit B to Defendants' Motion to Compel Non-Class Arbitration.  (Ex. B, ECF No. 13-3.)  The Arbitration Agreement is not mentioned in the RISC, (Ex. A, ECF No. 13-2), although it bears the signatures of both Holloman and a representative of the Dealer.  (ECF No. 13-3).  Importantly, the agreement asserts it "is part of any [RISC] or lease agreement you sign and any related credit, vehicle sale, or lease documents," and "[a]ny [such] arbitration . . . shall be governed by the [FAA] . . . and not by any state law concerning arbitration."  (*Id.*)  It provides:

> Any claim or dispute, whether in contract, tort, statute, or otherwise (including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase, lease, or condition of the vehicle, any retail installment sale contract or lease agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign your purchase, lease agreement or financing contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(*Id.*)

This language clearly reflects the intent of the Plaintiff and the Dealer to arbitrate any "claim or dispute" arising out of the RISC.  The Arbitration Agreement extends to any claim or dispute between Plaintiff and the Dealer's employees, agents, successors, or assigns relating to the RISC.  Accordingly, the Plaintiff's claims in this action are subject to a valid arbitration agreement.

11

## II.    Defendants Sufficiently Authenticated the Arbitration Agreement, Which Is Not Hearsay.

Plaintiff next argues that Defendants failed to properly authenticate the Arbitration Agreement,[1] which she asserts is hearsay.  (ECF No. 18 at 3–5.)  Specifically, Holloman avers that Defendants have not supplied any declaration or affidavit from the Dealer and Scott Smith ("Smith") "is not a qualified witness under Rule 902(11) who can authenticate this document as a business record, pursuant to Rule 803(6), [thus] the 'Arbitration Agreement' should not be considered by this Court."  (*Id.* at 5.)  Defendants counter that the Arbitration Agreement is not hearsay, citing numerous cases holding that agreements are not hearsay, as they are verbal acts or legally operative facts.  (ECF No. 19 at 5–7.)  Defendants further assert that even if the Arbitration Agreement was hearsay, Defendants have invoked the "integrated business records exception."  (*Id.* at 8); FED. R. EVID. 803(6).  The Arbitration Agreement has legal significance independent of the truth of any statement contained in it and thus is not hearsay.

The hearsay rule prohibits the admission of out of court statements offered for the truth of the matter asserted.  FED. R. EVID. 801, 802.  However, excepted from the definition of hearsay are communications that have "independent legal significance."  *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 566 (D. Md. 2007).  Communications with independent legal

---

[1] Federal Rule of Evidence 901(a) provides: "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  FED. R. EVID. 901(a).  The burden of establishing the authenticity of a particular document is a light one.  *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high—only a prima facie showing is required.").  All that is required is sufficient evidence so that a jury could reasonably find that a document was authentic.  *Id.* at 349.  In this case, Defendants have satisfied their burden of authentication of the Arbitration Agreement, as the Declaration of Consumer Portfolio Services is independently sufficient to support a prima facie case that the Arbitration Agreement is an authentic record.

significance are not offered for the truth of the matter asserted; their significance "lies solely in the fact that it was made." FED. R. EVID. 801 advisory committee's note; *see also Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1087 (10th Cir. 2001) ("The verbal acts doctrine applies only where the out-of-court statement actually 'affects the legal rights of the parties, or where legal consequences flow from the fact that the words were said.'"(quoting *United States v. Pungitore*, 965 F. Supp. 666, 673 n.1 (E.D. Pa. 1997))); *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992) (holding contracts and letters from attorney relating to contract formation are non-hearsay).

The Fourth Circuit has explained that "statements of independent legal significance form 'a part of the details of the issue under the substantive law and the pleadings,' which is to say that the underlying action necessarily involves utterances." *Jude v. Health Mgmt. Assocs.*, No. 97-1486, 1999 U.S. App. LEXIS 18427, at *4 (4th Cir. Aug. 9, 1999) (quoting WIGMORE ON EVIDENCE § 1770 (3d ed. 1940)). "The most common examples are words of contract, marriage promise, notice, insurance proofs and defamation." *Id.*

Here, because the Arbitration Agreement is offered only to show that Holloman and the Dealer entered the Arbitration Agreement, the significance of the document "lies solely in the fact that it was made." FED. R. EVID. 801 advisory committee's note. The Arbitration Agreement is a contract just like any other to which this rule clearly applies. The only significance of the Arbitration Agreement, and the sole purpose for which they are offered, is to show that Plaintiff entered into the agreement, which provides that either party may elect to have any dispute between the relevant parties decided by arbitration, and if a dispute is arbitrated, Plaintiff gives up her right to participate as a class representative or class member

on any class claim she may have against the Dealer and its employees, agents, successors, and assigns. As such, the Arbitration Agreement attached to Defendant's Motion to Compel Non-Class Arbitration is not offered to prove its substantive truth and is not hearsay.

Even if the Arbitration Agreement was hearsay, it is permissible under the business records exception. Under Federal Rule of Evidence 803(6), "[a] record of an act, event, condition, opinion, or diagnosis" is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness, if kept in the course of regularly conducted business activity and it was the regular practice of that business to make the record as shown by the testimony or declaration of a "custodian or another qualified witness." Federal Rule of Evidence 902(11) provides that records of a regularly conducted activity are authenticated "by a certification of the custodian or another qualified person." A "'qualified witness' need not have personally participated in the creation of the document, nor know who actually recorded the information." *Gen. Ins. Co. of Am. v. U.S. Fire Ins. Co.*, 886 F.3d 346, 358 (4th Cir. 2018) (quoting *United States v. Wein*, 521 F. App'x 138, 140 (4th Cir. 2013) (internal citations omitted)). Rather, the qualified witness must be able to testify that the record was "kept in the course of a regularly conducted business activity and also that it was a regular practice of that business activity to make the record." *Id.* (citing *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014)).

Here, the Defendants' submission of the Arbitration Agreement is supported by the Declaration of Consumer Portfolio Services, Inc. (Ex. C, ECF No. 13-4.) In the Declaration, Smith, an Assistant Vice President of Asset Recovery at Consumer Portfolio Services, declares that the Arbitration Agreement submitted as an exhibit with Defendants' Motion to Compel

14

Non-Class Arbitration is a "true, accurate, and authentic copy of the arbitration agreement . . . that was part of the RISC signed by Holloman." (*Id.* at ¶ 6.)  Smith further declares that he has reviewed and is therefore familiar with the records of Consumer Portfolio Services related to Holloman's account, (*id.* at ¶ 5), which the Dealer assigned to Consumer Portfolio Services in July 2017.  (*Id.* at ¶ 7.)  Importantly, Smith declares that he is "familiar with RISCs, including the arbitration agreements that are part of those agreements, such as the RISC and [Arbitration Agreement] in this matter; [is] able to identify the [documents] and establish them as records in fact generally made at or near the time of an agreement between a dealer and a retail customer in the regular course of a regularly conducted business activity by or from information transmitted by a person within the business with knowledge of the agreement."  (*Id.* at ¶ 8.)  While Plaintiff faults Defendants for "not suppl[ying] any affidavit of someone who has personal knowledge of the business practices of [the Dealer]," (ECF No. 18 at 5), Smith's declaration makes clear that he is familiar with the record-keeping procedures of both Consumer Portfolio Services and the Dealer.  Accordingly, this Court is satisfied that Defendants properly authenticated the Arbitration Agreement as a business record kept in the course of Consumer Portfolio Services' regularly conducted business activity and it was the regular practice of the Dealer to make the record as shown by the declaration of Smith.

### III.   Defendant Kline Is Contemplated by the Arbitration Agreement as an Agent of Consumer Portfolio Services.  As Such, She May Enforce the Arbitration Agreement.

Plaintiff's argument that Defendant Kline cannot enforce the Arbitration Agreement because Kline is not a party to or contemplated by the Arbitration Agreement is also unconvincing.  Holloman's view is undermined by the assignment of the Dealer's interest to

Consumer Portfolio Services.  This Court has observed that an assignment allows a third party to "stand in the shoes" of an original party to the contract, *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 996 (D. Md. 2002), "transfer[ring] all interests in the property from the assignor to the assignee."  *Roberts v. Total Health Care, Inc.*, 709 A.2d 142, 148 (Md. 1998).  As Judge Blake of this Court has previously noted, an assignment effectively replaces the name of the assignor in the contract with that of the assignee, removing any need for a contract to anticipate an assignee by, for example, specifically naming him as a future party.  *Graham v. Santander Consumer USA, Inc.*, No. CCB-17-3148, 2018 U.S. Dist. LEXIS 91802, at *6 (D. Md. June 1, 2018).

Here, the assignment had just that effect, granting Consumer Portfolio Services, though unnamed in the RISC, every right the Dealer previously enjoyed under the RISC. Plaintiff does not dispute that the Dealer assigned the RISC to Consumer Portfolio Services, nor does Plaintiff dispute that Kline acted as an agent of Consumer Portfolio Services with respect to the Collection Case filed against her.  Instead, Plaintiff argues that because Kline was not an agent of the Dealer, Holloman's claims against her fall outside the scope of the Arbitration Agreement.  (ECF No. 18 at 11.)  This is unpersuasive.  Defendants have shown that the Dealer assigned its interests under the RISC to Consumer Portfolio Services concurrent to Holloman signing the RISC and the Arbitration Agreement, (Ex. A, ECF No. 13-2; Ex. C, ECF No. 13-4), and the Arbitration Agreement makes clear that the either Plaintiff, the Dealer, or the Dealer's "employees, agents, successors, or assigns" may enforce the right to compel arbitration.  (Ex. B, ECF No. 13-3.)  As such, Holloman's claims against

Kline are within the scope of the Arbitration Agreement and Kline may enforce the right to compel arbitration.

### IV.   Plaintiff Has Not Shown that Defendants Waived Right to Arbitrate.

Lastly, Holloman argues that Defendants waived their right to compel arbitration after Consumer Portfolio Services brought the Collection Case against her and by failing to assert the right to compel arbitration more promptly.  (ECF No. 18 at 5–11.)  Plaintiff has not shown that Defendants waived the right to compel arbitration by previously commencing a debt-collection lawsuit against her in state court,[2] as the Arbitration Agreement provides that "[n]either you nor we waive the right to arbitrate . . . by filing an action . . . to recover a deficiency balance," (Ex. B, ECF No. 13-3); Holloman's claims could have been brought regardless of whether the Collection Case was filed; and Defendants' conduct in the instant action prior to moving to compel arbitration was not inconsistent with a desire to arbitrate.

The Supreme Court recently addressed when a party's litigation conduct results in the loss of a contractual right to arbitrate in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022).  In *Morgan*, the Court held that courts must place arbitration agreements "'on the same footing as other contracts' . . . [o]r in another formulation: [t]he policy is to make 'arbitration agreements as enforceable as other contracts, but not more so.'"  *Id.* at 1713 (quoting *Granite Rock Co. v.*

---

[2] Defendants aver that the Arbitration Agreement requires this Court to delegate Holloman's waiver argument to the arbitrator.  (ECF No. 19 at 9–12.)  While the Fourth Circuit has explained that "[i]n view of [courts'] gatekeeping function, the scope of a motion to compel arbitration is restricted to consideration of challenges specific to the arbitration clause," *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 184 (4th Cir. 2013) (citations omitted), there is general consensus that allegations of waiver by participation in litigation should be determined by the court, not referred to an arbitrator.  *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 713, (4th Cir. 2015); *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249–54 (4th Cir. 2001); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393–94 (6th Cir. 2008); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217 (3d Cir. 2007); *Marie v. Allied Home Mortgage*, 402 F.3d 1, 14 (1st Cir. 2005); *Republic Ins. Co. v. Paico Receivables LLC*, 383 F.3d 341, 346–49 (5th Cir. 2004).  Accordingly, this Court considers whether Defendants waived their right to enforce the Arbitration Agreement by participating in prior litigation.

*Teamsters*, 561 U.S. 287, 302 (2010); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).  Following *Morgan*, to waive the right to arbitration, Defendants must (1) know of an existing right to arbitration; and (2) act inconsistently with that right.  *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1714 (2022).  On the facts before us, this Court finds that Defendants must have known about an existing right to arbitration.  It is undisputed that Consumer Portfolio Services commenced its Collection Case against Holloman regarding the RISC in Baltimore City District Court on July 18, 2022.  (ECF No. 3 at ¶ 38.)  Given this, the Court reasons that Consumer Portfolio Services, as the Dealer's assignee, and Kline, as the attorney acting on Consumer Portfolio Services' behalf, must have known of Consumer Portfolio Services' right to arbitration under the Arbitration Agreement.  (Ex. B, ECF No. 13-3.)

However, this Court finds that Defendants have not acted inconsistently with the right to arbitration.  Under Maryland law, a waiver of a right to arbitrate may result from either an express agreement or be inferred from other circumstances.  *Cain v. Midland Funding, LLC*, 156 A.3d 807, 815 (Md. 2017).[3]  To make such a waiver without an express agreement, the party

---

[3] Plaintiff claims that *Cain*, which was decided before *Morgan*, "is squarely on point in this matter." (ECF No. 18 at 9–11.)  While Defendants cite to *Butler v. Mariner Fin., LLC*, No. CCB-17-1738, 2017 U.S. Dist. LEXIS 206342 (Dec. 15, 2017), this Court finds that *Butler* and this District's other prior decisions rejecting the *Cain* analysis, *see Optical Mechs., Inc. v. Cymbioms Corp.*, No. GJH-20-1947, 2021 U.S. Dist. LEXIS 24786 (D. Md. Feb. 9, 2021); *Castellanos v. Mariner Fin., LLC*, No. MJG-17-3168, 2018 U.S. Dist. LEXIS 8593 (D. Md. Jan 19, 2018), to be immaterial in light of the Supreme Court's decision in *Morgan*.  *See Ford v. UHG I LLC*, No. 22-cv-00840-LKG, 2023 U.S. Dist. LEXIS 31069, at *14–17 (D. Md. Feb. 23, 2023).  While it is true that *Butler*, *Optical Mechanics*, and *Castellanos* refuted the same *Cain*-based argument by a non-moving party, the aforementioned decisions were decided prior to the Supreme Court's decision in *Morgan*, which held that courts may not "condition a waiver of the right to arbitration on a showing of prejudice."  142 S. Ct. at 1713.  Simply stated, the waiver standard under FAA was much narrower, requiring a showing of prejudice by the nonmoving party, at the time *Butler*, *Optical Mechanics*, and *Castellanos* decided not to apply *Cain* to applications to enforce arbitration pursuant to the FAA.  Following *Morgan*, this District has followed *Cain*—which, to be clear, was decided under the Maryland Uniform Arbitration Act—as to whether a choice to litigate is inconsistent with the right to arbitrate under the FAA.  *See Ford*, 2023 U.S. Dist. LEXIS 31069, at *14–17.

must act inconsistently with an intent to insist upon enforcing the arbitration agreement. *Id.* To determine whether Defendants acted inconsistently with their right to arbitrate the instant action, this Court considers: (1) whether a right to arbitrate the claims that were litigated in state court existed; and (2) whether the claims sought to be compelled to arbitration in this case are "related" to the claims litigated in state court. *Id.* at 815–17.

Here, Consumer Portfolio Services had the right to arbitrate its Collection Case against Holloman.  However, the Arbitration Agreement expressly provides that "[n]either you nor we waive the right to arbitrate . . . by filing an action . . . to recover a deficiency balance." (Ex. B, ECF No. 13-3.)  Even if this express reservation of Consumer Portfolio Services' right to enforce arbitration was inconsequential, Holloman's claims in this action are not sufficiently related to the Collection Case.

Quite simply, some of Plaintiff's claims arise from alleged improper collection activities that pre-date the Collection Case.  In Counts I and II of her Complaint, Holloman alleges that Defendants violated the MCDCA and MCPA as a result of the Collection Case, among other certain illegal debt collection activities, including sending notices which were misleading and/or failed to provide information required by law.  (ECF No. 3.)  In Count III, Holloman alleges that Kline violated the FDCPA "[b]y communicating with [] Plaintiff . . . and indirectly and threatening and/or actually pursuing litigation and demanding and collecting sums not legally due from the [] Plaintiff . . . based upon Consumer Portfolio Services' defective repossession notices." (*Id.*)  In Count IV, Holloman requests declaratory and injunctive relief against Consumer Portfolio Services, noting in relevant part "[t]he Repossession Class . . . have been sued or will be sued for collection of sums which Consumer Portfolio

Services alleges are due." (*Id.*) Courts have explained that "waiver does not extend to any unrelated issues arising under the contract" and that waiver only extends to other disputes when "*all* of the parts of the dispute [are] deemed to be interrelated." *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 450 A.2d 1304, 1307–09 (Md. 1982) (emphasis added); *see also Cain*, 156 A.3d at 816–18. Claims are related when "*[t]he claim is in actuality part of one basic issue.*" *Charles J. Frank, Inc.*, 450 A.2d at 1309 (emphasis in original). Because Plaintiff could have brought this lawsuit regardless of whether the Collection Case was filed, this Court finds that the factual record indicates that Holloman's claims are insufficiently related to the prior collection case to show that Defendants waived their right to compel arbitration.

Further, while Holloman faults the Defendants for removing this action on January 18, 2023, and Defendant Kline for filing an Answer on January 19, 2023, this Court finds that Defendants' litigation activities prior to moving to compel arbitration were not inconsistent with a desire to arbitrate on the facts before us. It is well-established that removing a case to federal court will not by itself constitute waiver of the right to arbitrate. *See In re Mercury Constr. Co.*, 656 F.2d 933, 940 (4th Cir. 1981) (*en banc*), *aff'd sub nom. Moses H. Cone Hosp. v. Mercury Constr. Co.*, 460 U.S. 1 (1983) (removing action from state to federal court does not constitute waiver). Moreover, the existence of a binding arbitration agreement is properly pleaded in the answer, *see* FED. R. CIV. P. 8(c), 12(b), and Defendant Kline raised the existence of the arbitration agreement as an affirmative defense in her Answer. (Answer Def. Amy K. Kline 14 ¶¶ 2–3, ECF No. 4.) "Failure to raise the issue of arbitration before an answer is filed will rarely, if ever, amount to waiver of arbitration." *Am. Heart Disease Prevention Found. v. Hughey*, No. 96-1199, 1997 U.S. App. LEXIS 1806, at *8 (4th Cir. Feb. 4, 1997) (citing

*Mercury*, 656 F.2d at 940).  For these reasons, this Court finds that Defendants' litigation activities were not inconsistent with a desire to arbitrate.

**V.     Holloman Waived the Right to Bring a Class Action Suit or Class Arbitration.**

The Arbitration Agreement also contains a waiver of the right to bring a class action suit or class arbitration.  (Ex. B, ECF No. 13-3 ("IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS").)  Because the Arbitration Agreement is valid and binding on the Plaintiff, and enforceable by the Defendants, arbitration may proceed only on an individual, not class, basis.

**VI.    This Matter Will Be Stayed While the Parties Litigate Their Claims and Defenses Against Each Other Before an Arbitrator.**

Because the Court concludes that the Arbitration Agreement is valid and enforceable, the Court also must stay the matter.  *Gibbs v. Haynes Invests., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (holding that, when an agreement "clearly and unmistakably" delegates the threshold issue of arbitrability to the arbitrator, the Court must enforce that delegation clause and send that question to arbitration); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("[T]he FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' This stay-of-litigation provision is mandatory.") (quoting 9 U.S.C. § 3).

**CONCLUSION**

For the foregoing reasons, it is HEREBY ORDERED this 15th day of June, 2023 that:

1. Defendants' Motion to Compel Non-Class Arbitration (ECF No. 13) is GRANTED;

2. This matter will be STAYED while the parties litigate their claims and defenses against each other before an arbitrator; and

3. The Clerk of this Court shall transmit copies of this Memorandum Order to counsel of record.

Dated: June 15, 2023

                                                ___/s/_____

                                                Richard D. Bennett
                                                United States District Judge